Good morning, ladies and gentlemen. Judge Grosvenor is participating by a video link from Massachusetts. One of the consequences of that may be a lag in transmission between when she speaks or when you speak and when she hears it. So I may ask you to hold up if I see her talking and you haven't responded or the reverse. But we will try to make this work. Thank you, Judge Easterbrook. Good morning, Judge St. Eve and Judge Easterbrook. Good morning. Our first case for argument this morning is the Stockbridge-Munsee Community against the State of Wisconsin. Mr. Crowl. May it please the Court. Scott Crowl on behalf of the Stockbridge-Munsee Community. I reserve six minutes for rebuttal. The District Court erred by dismissing as untimely Stockbridge-Munsee's lawsuit brought against the Ho-Chunk Nation for illegal class 3 gaming and against the State of Wisconsin for failing to take enforcement action against such illegal gaming. The Stockbridge-Munsee does not seek damages, does not seek monetary relief. Rather, it seeks compliance going forward, nothing more. Congress was very clear in providing tribes in the Stockbridge-Munsee situation the ability to bring an action in federal court seeking prospective equitable relief, namely force Ho-Chunk's compliance with its gaming compact going forward. Counsel, I hope you will sometime in your argument address what seems to me a potential problem in the way you just put that. It is clear in the statute that an Indian nation can bring a suit, but is it clear that an Indian group can bring a suit complaining about competition? I've looked through the statute and I can't see anything protecting one tribe from competition by another. In other words, I'm interested in whether your client is within the zone of interest protected by this statute. IGRA itself does not provide protection. Could you please use real English words? The Indian Gaming Regulatory Act. Just use the Act. It's really very simple. The Act itself does not provide one tribe any type of protection of competition against another tribe, but the Act provides for tribes and states to reach compacts, which are the documents that govern the gaming activities on Indian lands. But that's precisely what leads to my concern. Because there's nothing in the Act that protects one tribe from competition by another, if the other tribe and the state sign a compact, why would any tribe be within the zone of interest protected by the Act when it sues to prevent competition? Because the compact that was negotiated between the Stockbridge-Munsee tribe and the state of Wisconsin and the compact provided by the Ho-Chunk Nation in the state of Wisconsin, and indeed all of the Wisconsin compacts, provide for zones of interest regarding the protection of their particular markets. In fact, the state entered into different provisions with the different tribes, all designed with the idea that different markets would be protected. One of those was the commitment that Ho-Chunk's gaming operation would be an ancillary facility. By being an ancillary facility, it's limited the type of gaming that can be conducted on those lands. Because the compact, which is derivative from the Act, and is the document to govern gaming activity, and we're looking for the enforcement of that agreement, then when another tribe is operating in violation of those agreements, you've created a situation to where the Stockbridge-Munsee tribe has standing to bring this instant litigation. I think you may be misinterpreting this question. The zone of interest is not a synonym for standing. There is no doubt that your client claims injury. Maybe I will ask the parties to file supplemental memos on this, but the zone of interest requirement is built into all federal laws, and the Supreme Court has fairly recently, in cases like Lexmark, elaborated on the nature of that requirement. None of the parties has addressed it, and it concerns me. But why don't you proceed with your argument? Before you proceed, I would like to ask you this. Even if we were to accept your claim that latches, rather than the limitations periods, is the proper focus, doesn't the record here indicate an unreasonable delay and prejudice right on its face? I mean, given that Stockbridge-Munsee knew about the violation in 2008, isn't the delay in filing unreasonable? And why wouldn't the expenditure of money by Ho-Chunk in the interim on building the casino be really clear evidence of prejudice? Two points. It is correct that the district court stated that it was reasonable for Ho-Chunk to expect that Stockbridge-Munsee would bring the action in 2008. But he did that in the context of addressing the applicability of the statute of limitations, not in the context of latches. In latches, the factual inquiry is, one, whether there is an unreasonable lack of diligence by the party against the defense that is asserted, and two, prejudice arising therefrom. But did you raise that argument with the district court? You said he didn't address this in the context of latches. He only addressed it in the context of statute of limitations. But you didn't raise the latches argument below, did you? The argument of latches was presented, but in the motion to defense was based, or the motion for judgment on pleadings was based on statute of limitations. But in response to the motion, did you raise the latches argument? You may have pled it as an affirmative defense, but did you raise that in response to the motion? And have you waived it if you didn't? No, I would argue that we did raise it. We did address specifically the reasonableness, the two prongs, both the reasonableness of the tribe's delay and the lack of prejudice to Ho-Chunk. It's incorrect that Judge Robner interpreted that Ho-Chunk spent money in reliance on our untimeliness in bringing the lawsuit. It was when they announced the expansion that the lawsuit was brought. And so any prejudice that Ho-Chunk inflicted upon themselves going forward from that point was with clear notice of this litigation. So it's not like they spent the money to do the expansion. And after that money was spent, Ho-Chunk brought the lawsuit. Stockbridge-Munsee brought the lawsuit. Stockbridge-Munsee brought the lawsuit pretty much immediately after Ho-Chunk's announcement of their major expansion. Judge Robner, you began to ask a question and may have been stepped on by the delay. Did you have something? No, exactly the same question that St. Eve was asking. Okay, we're fine then. On the reasonableness of the delay, the complaint and the pleadings lay out the circumstances to where going to standing, for example, there's a question of whether when Ho-Chunk was operating this low-level, modest gaming facility that didn't imperil Stockbridge's interest, Stockbridge looked at the situation and said, well, maybe we have standing, maybe we don't. Maybe it's a material breach, maybe we don't. And there wasn't this imperil that's imminently in front of them as a result of Ho-Chunk continuing to operate a modest gaming facility in Wittenberg. But, Mr. Crowl, again, where did you raise the reasonableness of the delay in the briefing before the district court? I understand you've raised it in your arguments here, but it seems to me from reading the district court record that you raised the issue of statute of limitations or addressed the issue of statute of limitations, not of latches. Whether we use the word latches or not, we discussed the factual issues of the reasonableness of the tribe's timing in the litigation and the lack of prejudice of Ho-Chunk as a result of that timing. But you can't expect the district court to take from that that you're arguing latches. You're not arguing that, are you? Well, the district court went specifically and found that it was reasonable for Ho-Chunk to expect Stockbridge Muncie to have filed the litigation earlier. So the elements of latches were clearly in front of the district court. My goodness. You need to spell things out for district courts. You can't expect them to figure out what you mean when there's a word called latches that says all. The context in which we are in front of this court is in the district court granting a motion for judgment on the pleadings that was based on statute of limitations. We made it clear that statute of limitations isn't the appropriate standard. We made it clear that there's a factual argument that it was reasonable for Stockbridge Muncie to pursue this litigation at the time that we did. We made the presentation and the argument that there is no prejudice to Ho-Chunk other than what is self-inflicted by their going forward and spending that money for the expansion only after knowledge of Stockbridge Muncie's position and after the lawsuit was filed before the district court. Now, speaking of issues that would have been preserved in the district court, you argue in the brief that the statute of limitations for public nuisance should apply here rather than the six-year one that was adopted. But the district court stated that the argument was not timely asserted. So if you could tell us whether that claim was adequately preserved and where, I think that would be somewhat helpful. Certainly. The analysis regarding the applicability of the public nuisance statute as being the most analogous state statute was provided in the court-ordered supplemental briefing after it had ruled on the tribe's motion for judgment on the pleadings, asked for supplemental pleading as to whether the state should also be dismissed. And in that pleading, the tribe laid out in quite some detail the appropriateness of the public nuisance agreement. At the same time, the tribe subsequently filed a motion to file a proposed First Amendment complaint, and it was submitted in that briefing as well. And what is the public nuisance law that you are arguing is the most analogous here for statute of limitation purposes? It's the Wisconsin statute that allows for a party to file a lawsuit to stop illegal gambling. And that statute says there's a six-year statute of limitations, but the way that that statute is applied is it looks to the underlying nature of the activity. And if the underlying activity that's being complained of is one that was permanent and led to subsequent harm, then you had to file the action within the six-year period. But Wisconsin state law says when that action is an ongoing activity that is capable of abatement, then the state's six-year statute of limitations does not apply. The complaint here, as Judge Easterbrook pointed out earlier, focuses on the economic injury to your client, not on any public annoyance. What is it in the allegations that would support your argument that this public nuisance law doesn't apply? It's both the tribe's economic interest and the tribe's governmental interest. The proper regulation of Indian gaming is the cornerstone of the Indian Gaming Regulatory Act, and that's why we think it's appropriate that Congress specifically provided the ability of one tribe to file a lawsuit to enforce the compliance of another tribe to the terms of its— But what's the nature of the public annoyance that you have alleged in the complaint to support your public nuisance argument? Illegal gambling, which is a public nuisance under Wisconsin law. Illegal gambling is what this litigation is really about. What we're looking to do is bring Ho-Chunk into compliance. If there wasn't a provision in the compact regarding competitive interest, if there wasn't a provision in the compact providing the limitations on ancillary facilities, we wouldn't be here. But those were in the compact. In fact, the state benefits greatly from those provisions as a result of the revenue that— But the money that it does pay is very significant in terms of the bottom line to the Stockbridge-Munsee tribe in terms of the ability to use that gaming revenue for governmental purposes. And we're looking to the state and Ho-Chunk to adhere to the commitments that they made in their compacts, which are not merely contracts as they want to characterize them, but are the agreed-upon documents as prescribed by Congress in the passage of the Act to govern the activities that occur on Indian lands. And— You know, you also argue that the sovereign immunity principles preclude applying the Wisconsin Statute of Limitations here. But didn't the Court merely look to state law to determine the appropriate federal limitations period here rather than actually apply Wisconsin state law? I think the answer is probably mixed. What Congress—the first, the congressional statute, the Act, has its own inherent time limitation because it only allows for an action for prospective equitable relief. If it's not current and ongoing activity, then there's no basis in which to bring an action under the provision in IGRA. When the state—when the Court says, well, we're going to borrow state law as a matter of federal law, you know, that distinction gets really muddled because what you're doing then is coming up with a result that enables the state legislature to manipulate their own laws in a manner that impacts tribal rights under the Indian Gaming Regulatory Act. And Congress, in the passage of IGRA, made very clear that it was preempting the field as it relates to Indian gaming on Indian lands, a field that had previously been a muddled morass of trying to figure out how or what degree state law applies to federal Indian lands. What Congress did is said— It seems to me that because the federal statute didn't indicate that the claim had no limitations period, that the Court considered the analogous state limitations periods to determine which to adopt here. But that's not the same as applying state law to the federal claim. Two points. First, you know, I don't think it's appropriate— I don't think it's correct to say that there was no limitations period in the federal statute, that the very nature of the federal statute— I said it didn't indicate that the claim had no limitations period, as you said. But that's what I'm disagreeing with. I think the statute indicates that its limitations period is limited to situations where you have the ability to seek prospective equitable relief, which means that the activity being complained of must be ongoing and must be capable of abatement. The federal preemption issue becomes relevant because if you allowed it to stand, you basically then allow the state of Wisconsin and actually any state and multiple states to thwart the exercise of tribal rights by manipulating the statute of limitations that the federal courts would then use to apply to them. Congress, in passing IGRA, made it very clear that the only manner in which a state may— a state law may apply is by agreement between the tribe and the state in the context of a tribal state compact. And Wisconsin could have negotiated that in the compacts. They did not. There's nothing in the compacts that suggests in their dispute resolution context this is a statute of limitations that would apply. I only have one minute left. I reserved six, so I'll luster some more questions. Certainly, counsel. Thank you. Mr. Marston. Good morning, Your Honors. May it please the Court. The first issue I think you need to address is whether or not the district court had jurisdiction in this case. It's our position that it did not. And the reason that it didn't is because it didn't meet the criteria set forth in Section 7 or D7A2 of the Act. The grant of jurisdiction provisions in the Act require that certain criteria be met. First, the tribe must exercise jurisdiction over Indian lands. Second, there has to be a violation of the compact. And third, it's our position— Counsel, your argument seems to be that because the claim is no good substantively, there's no jurisdiction. There is, of course, a long history of the Supreme Court considering arguments of that sort. They don't work. I mean, that's just the principle holding of bell against wood. Is there any way your argument is compatible with bell against wood? Well, I believe it is. We're looking—when you have a statute and the statute is ambiguous on its face, the court is required to interpret the statute. And here there is an ambiguity, and that is what Indian tribe is authorized to bring a cause of action under the statute? In order to bring that cause of action, again— Let me put this differently. Why isn't there jurisdiction under the federal question jurisdiction, 28 U.S.C. 1331? This is a claim based on a federal statute. 1331 says there's jurisdiction over any claim arising under federal law. You don't need the Act to supply jurisdiction. You need the Act to supply a claim, a remedy. My argument is that this is a—even though a compact is an agreement between sovereigns, this is still your run-of-the-mill— The claim does not rest on a compact. The claim rests on a federal statute. Do you know bell against wood? It's a fundamental case in the field of federal jurisdiction. I've read the case, but quite honestly, Your Honor, as I sit here, I don't remember the specifics. I suggest that you move to some other argument. Well, they haven't stated a cause of action because there's no violation of the compact. In order to be a violation of the compact, we have to be not conducting gaming on Indian lands that are subject to the 2719 prohibition, and we have to be conducting gaming in a facility that is not an ancillary facility. First of all, we are conducting gaming on Indian lands. In 1986, the Secretary of the Interior issued a proclamation proclaiming the Wittenberg parcel, the parcel that— I think it's fine if you want for you to address the merits, but I wonder if you're going to defend the district court's actual holding. Well, I am. I believe— Sir, I will ask you a question. If we determine that this claim should be analyzed under the doctrine of latches rather than a straightforward application of the statute of limitations, would a remand be necessary to determine whether the delay was unreasonable and the extent of prejudice and to allow the district court to consider that standard? I think there's sufficient facts in the record to allow this court to rule on the latches issue. There is absolutely no doubt that on a date certain, Stockbridge, amongst the Indian community, knew that they were being harmed and that specific act was when the nation began conducting gaming on a parcel of land that they alleged or believed was not Indian lands and in a facility that they believed wasn't an ancillary facility. They candidly admit in the Horsley Declaration that's in the record that they began losing revenue, yet they took no action. And as a result of that delay, waiting until the nation began to—took out a loan incurring millions of more dollars in debt to expand the facility, they waited until that to occur. The nation was harmed. They were prejudiced. And as a result of that, if you want to do equity, if you're coming to the court and you want the court to do equity, then you have to do equity yourself. And here they didn't do that. They purposely delayed, and as a result of that, the nation was prejudiced. Do you agree that the latches argument was not sufficiently developed before the district court? I believe that it was not argued before the district court. There was cases that Stockbridge-Munsee cited into their brief that discussed latches, but they didn't actually argue that latches before the district court. Having said that, for the reasons that I just said, I think that there's sufficient facts in the record for this court to rule on the latches issue. The district court found that Stockbridge-Munsee's claims were barred by the statute of limitations period. The district court did exactly what the United States Supreme Court and the federal courts of appeal have directed the district courts to do, and that is where you have a cause of action in the federal statute and there's no statute of limitations period set forth in the federal statute or the act in this case, then the federal courts are supposed to look to the applicable state statute of limitations period. That's exactly what the district court did in this case. Has anyone argued that 28 U.S.C. 1658A applies? That's the standby federal statute of limitations, four years. In the district court below, we made the argument that the Secretary of the Interior's actions in approving the compact and issuing the… I'm not asking about that. I'm asking about a particular federal statute. Has anyone argued that it applies? Yes, we argued that either the six-year state statute of limitations period or the federal six-year statute of limitations period for ADA claims would apply. I don't believe so, Your Honor. Thank you. We argued instead that 28 U.S.C. section 2415, which is a six-year statute of limitations period for bringing an ADA… Any particular reason why you didn't rely on 1658? No, we argued to the district court that the appropriate statute of limitations period was the state six-year statute of limitations period and if there was… 1658 is a general federal statute of limitations for all federal statutes lacking their own statute of limitations. But the case law… And it's four years. But the case law says that it's a probe that Congress has acquiesced in the federal courts adopting state statute of limitations and the case… You would not be making this argument if you had ever read that statute. I'm not familiar with the statute, Your Honor, and I haven't read it. That's what I thought. Okay. I'm making the argument that the district court acted appropriately in adopting the state statute of limitations because that's what the federal cases and the United States Supreme Court has said that the federal courts… And nobody's talked about that here. Now, there is a time question. The question is whether the Indian Game Regulatory Act has been sufficiently amended after the enactment date of 1658. But since no one seems to be arguing about it, I won't pursue the issue. It was not briefed and it wasn't argued in the court below, Your Honor. Mr. Bartson, the district court denied the attempt to file an amended pleading in the case where they were attempting to plead around the statute of limitations… That's correct, Your Honor. …issue in the alternative. Why was that appropriate rather than giving them another bite at the apple? Well, because, first of all, the Stockbridge-Munsee changed its position in the middle of the litigation. Initially, they alleged in their original complaint that they were harmed when the Ho-Chunk Nation initially opened its gaming facility. Then it sought to amend its complaint and alleged that it wasn't harmed until the expansion took place. And the district court simply said, I'm not going to allow you to do that. I think they pled that in the alternative, and the case law certainly allows parties to plead in the alternative. That's correct. So why shouldn't they be permitted to proceed on their alternative arguments? Again, I think what the district court did was the district court found that regardless of whether the harm occurred when the Nation initially began gaming or the harm occurred with the expansion, that they sat on their rights, the harm occurred when the initial gaming began, and therefore it was barred by the statute of limitations period. And so, therefore, amending the complaint to assert that they were harmed by the expansion, there was enough facts before the district court to say, no, that wasn't the case. You were harmed when the initial gaming facility opened up, and there was just continuing harm. And, therefore, there was a specific act and a specific time when that harm occurred, and it was barred by the statute of limitations period. And, therefore, there was no reason to—nothing would be gained by amending the complaint and pleading in the alternative. Thank you, Mr. Marston. You're welcome, Your Honor. Thank you. Mr. Bolavia. Thank you, Your Honor. Excuse me. I'd like to start off right where you were near the end of the last questioning regarding 28 U.S.C. 1658A. While it is true that the parties did not consider and brief that statute, I just took a quick look at it, and it appears to me that that default statute of limitations only applies where the statute in question that lacks a statute of limitations was enacted after Section 1658. Enacted or amended, it turns out. That's from Jones against R.R. Donnelly and Sons. Excuse me. I'm a little hoarse today. And it looks to me like the act has been amended after 1990. But if no one has argued it, and it's an affirmative defense, no one has argued it. Then turning to my own argument, I'd like to start by drawing the Court's attention to what I think is the main difference between the Stockbridge's claims against Ho-Chunk and their claims against the State in this case. The claims against Ho-Chunk seek to enjoin Class III gaming activity that's allegedly being conducted unlawfully, while the claims against the State don't seek to enjoin Class III gaming activity, but seek to enforce contractual obligations of the State under its compact with the Stockbridge. Now, I think this makes a difference to the arguments that they make against the State in this appeal. Their first argument, and I think their primary argument, is I think essentially a policy argument based on the act's purpose of providing a legal framework for tribal gaming as a tool of tribal economic development. But they basically argue that applying a statute of limitations to an action to enjoin unlawful gaming activity would allow such activity potentially to continue forever, and that would undermine the purpose of VIGRA. But that argument doesn't apply to the claims against the State, because those are not claims that seek to enjoin gaming activity. They're claims that seek to enforce compact obligations. In any event, I think that if the Court finds that there is a statute of limitations for compact-based claims, that would not be contrary to the policy of fostering tribal economic development. Congress chose the Tribal-State Compact as one of the primary mechanisms for advancing the economic development goals of the act, and one of the ways in which compacts do that is by enabling tribes and states to negotiate a secure and settled business environment for tribal gaming. Statutes of limitation further the same goal by reducing uncertainty and reducing the disruptive effects that long-standing, unsettled claims can have on economic activity. So I think that really, finding a statute of limitations applicable to VIGRA compact claims actually advances the economic development policy. It's also important to note, I think, that the argument Stockbridge is making cuts both ways and can work against tribal interests as well as in their favor. Stockbridge argues that the act's policy of helping tribes would be undermined if a time limit were placed on the tribe's claims against the State, but if that argument is correct, then states would also have no time limit for bringing compact claims against tribes, and tribes would then be exposed to the possibility of long, unsettled claims, which again provides uncertainty in the business environment and works against rather than for the tribal economic development. The contractual nature of the claim against the State also affects their second argument, which is that no statute of limitations applies because they're seeking equitable rather than legal relief in the form of an injunction of Class III gaming, but again, as I've just said, I think their claims against the State don't involve enjoining unlawful gaming activity, so I don't think that argument connects up in the way they have suggested with their claims against the State. They seek to enforce contractual obligations under compact, and actions to enforce a contract typically are subject to statutes of limitation. I also think that their claim against the State is more legal than equitable in character in another respect, which is that they seek declaratory relief, which would fix certain financial obligations between the parties under the compact, and that declaratory relief, if given, could serve as the foundation for a future attempt to obtain monetary relief against the State, even though they haven't specifically asked for monetary relief in this action. They have suggested in briefing that the State should be required to disgorge previous revenue-sharing payments. And even within the scope of this action, I think that Stockbridge is essentially asking the courts to declare and enforce the monetary obligations of the State and the tribe under the compact. So in both of those respects, I think that the claim for declaratory relief against the State can be considered more legal than equitable in character. Stockbridge also tries to analogize their claim to the claim for injunctive relief in the Schur case, which is discussed in the briefing, in which this court found that such a claim for injunctive relief was not barred by the statute of limitations under the Americans with Disabilities Act. Now, I think the Schur decision really was premised upon the specific language of the Americans with Disabilities Act, which expressly contemplated a cause of action being available where a person with a disability is being subjected to discrimination or about to be subjected to discrimination. And I think that that created an ongoing basis for claims for injunctive relief under the Americans with Disabilities Act that is not paralleled by the language of the Indian Gaming Regulatory Act upon which Stockbridge relies. But be that as it may, their claims against the State, once again, aren't based on that language, which relates to enjoining Class III gaming. It's based on the compact obligations. And I think that applying the rationale of a case like Schur, and the district court said this, that the rationale of a case like Schur is more appropriate in the context of civil rights cases and tort cases than it is in a case where we're enforcing the requirements of a voluntary agreement by the parties where the underlying rule of liability is not the sort of special rule to do or not do certain things that would hurt other people in general. The underlying rule of liability is one that was negotiated in the compact between the parties, and it only applies to them and not to all the world. Finally, the contractual nature of Stockbridge's claim against the State also defeats their public nuisance argument, I think. They argue that their claim to enjoin the Wittenberg Casino is analogous to a state law action to enjoin a gambling house as a public nuisance, and they infer from that that they should get the kind of special statute of limitations treatment that is sometimes afforded to such public nuisance claims. But once again, their claims against the State do not involve enjoining the Wittenberg Casino. They relate to enforcing the compact. So an action to enforce that agreement is not analogous, I think, to a public action to abate a public nuisance. It's analogous to an action to enforce a contract, because that's what it is. Now the next main point I'd like to address is Stockbridge's argument that its claims can't be subject to a statute of limitations, because as a tribe it's a sovereign, and under the traditional common law doctrine of nullum tempus, a statute of limitations can't be asserted against the sovereign. The first point here is that the nullum tempus doctrine, like any common law doctrine, can be overridden by legislation. For example, there are federal statutes that impose statutes of limitations on various categories of actions brought by the federal government. In this case, the district court borrowed the Wisconsin statute of limitations for contract actions, and Stockbridge, in their nullum tempus argument, argued that statutes of limitations in Wisconsin are subject to the nullum tempus doctrine, but that's not true. There hasn't been any showing that the doctrine has ever been applied by the Wisconsin courts, and more importantly, the Wisconsin legislature has, by legislative action, made statutes of limitation applicable to actions by the state. The nullum tempus doctrine also doesn't apply here, because Stockbridge and the state have agreed in their compact, section 22E, to grant each other a limited waiver of sovereign immunity from certain claims in federal court. There's no mention in the compact that the waiver of sovereign immunity does not include waiver of sovereign immunity from statutes of limitations. The usual rule about statutes of limitations is that they are considered to be a restriction on a waiver of sovereign immunity from being sued. That is, when a sovereign consents to being sued, unless it expresses otherwise, it's only consenting to lawsuits brought against it within any applicable statute of limitations, period. So statutes of limitations should not be construed in a way that would expand a sovereign's waiver of its defensive immunity from suit beyond what the sovereign intended. So applying that to the doctrine of nullum tempus against a sovereign defendant in a compact enforcement case like this one, that would deprive the sovereign defendant, in this case the state, but it could be the tribe in another case, would deprive the sovereign defendant of the benefit of the statute of limitations. Thank you, counsel. Thank you. Anything further, Mr. Crowell? Yes, Your Honor. I would like to address the specific point regarding latches and its relevance regarding this appeal. Just as the court pointed out that 1658 is an affirmative defense that hasn't been raised, the motion for judgment on the pleadings was based on the affirmative defense of statute of limitations. They did assert the affirmative defense of latches in their answer, but they did not make a motion to the court that the case should be dismissed on latches. So we believe that it's perfectly appropriate, as Judge Robner suggested in her question, that this case be remanded so that the factual record can be created and presented to the court regarding the reasonableness of Stockbridge-Munsee in its timing in bringing the litigation and the lack of prejudice to the Ho-Chunk Nation, which Mr. Marston, in his own statement, admitted that all they had done prior to the knowledge of the lawsuit was take out a loan. They didn't take draws on that loan, but they had the ability upon that notice to avoid the expense in going forward with the expansion. So any prejudice to them was self-inflicted. I want to make a point also regarding the state's argument, where they made a statement that this is really a case for money damages over an agreement that's voluntarily entered into between the parties. Well, number one, it's not a voluntary agreement between the parties. Thank you, counsel. It's a requirement. Thank you, counsel. Oh, I'm sorry. I see that I'm out of time. Thank you. The case is taken under advisement. The court requests all parties to file within 14 days supplemental memoranda addressing the question whether the Stockbridge-Munsee community is within the zone of interests protected by the act with respect to the sort of claim being made in this case. And counsel should look particularly at Lexmark International against static control components. It's 572 U.S. 118. We look forward to the receipt of those memos within 14 days.